The next case, number 20-1723, Julio Mario Breseno-Luna v. Todd Blanche. At this time, would counsel for the petitioner come to the podium and introduce himself on the record to begin? He has 10 minutes. Good morning. Carlos Mauricio Duque for the petitioner. May it please the court. This case involves an in absentia order of removal issued against the petitioner by the Board of Immigration Appeals. The removal proceedings were initiated by issuance of a notice to appear by the Department of Homeland Security against the petitioner that did not include the time or the date of the initial hearing. Later, the Boston Immigration Court sent him a notice of hearing that informed him of the time and date of that hearing, and when he failed to appear, the immigration judge in the Boston Immigration Court issued an in absentia order of removal. The petitioner later challenged that in absentia order, arguing that the notice to appear under a recent, at that time, recent Supreme Court decision in Pareda, that the notice to appear was faulty, and as a result of that, that the petitioner was entitled to reopening and termination of the proceedings. The immigration judge denied the case, and the petitioner appealed to the Board of Immigration Appeals, expanding his arguments on appeal. The Board of Immigration Appeals reached the merits of this case. They found that the in absentia order of removal was proper, despite the fact that the notice to appear did not comply with 8 U.S.C. Section 1229 A.1. And in reaching their decision, they cited to matter of Bermuda's Coda. They cited to this court's case in Goncalves-Pontes, and they also cited to their precedent matter of Pena Mejia. The conclusion of the Board of Immigration Appeals was that the in absentia order was proper, and that the petitioner was not entitled to relief. In our petition for review, oh, but the reason why the Board made that finding was only because of the time and date issue with the notice to appear. Before this court, the parties have extensively argued that issue, and have focused their briefing on that matter. However, the Supreme Court recently in Campos Chavez decided how the statute operates, how Section 1229 A.B.5.A operates together with 1229 A.B.5.C. to foreclose this argument that the time and date is relevant for purposes of rescission of an order. So are you still arguing that? And if so, why doesn't the Supreme Court's discussion of B.5.A foreclose that argument now? Yes. In the briefing, we attempted to preserve that argument, explaining that our interpretation of Section 1229 A.B.5.A was more in tune with the statutory history, et cetera. But upon further review of the case, our point was that the Supreme Court's interpretation of that section of the law was not necessary for its decision. However, we now understand that the reading of those two statutes is very closely tied and necessary for the Supreme Court to say that only a single document is necessary for the Department to carry its burden by clear, convincing, and unequivocal evidence that written notice was served under Section 1229 A.B.5.A. However, the Supreme Court's decision in Campos-Chavez also highlights the importance of the arguments on appeal that were not addressed by the Board of Immigration Appeals. And I want to get to those, but so are you conceding on your first issue, the Campos-Chavez issue? Yes, ma'am. You are? Yes, ma'am. Okay. So let's get to that second issue. You argue that the BIA ignored three of your arguments, and I think the government's position is, well, you failed to exhaust them. Well, they weren't exhausted because the holding of the Board of Immigration Appeals is squarely on whether rescission is available to the petitioner or was available to the petitioner through the motion to reopen. The case law that the Board uses to base its decision clearly addresses, specifically a matter of Pena Mejia, clearly addresses the proper interpretation of Section 1229 A.B.5.A. So in that regard, the legal issue was addressed by the Board. The Board just didn't really consider the additional arguments that are necessary to that determination because as we now know from Campos-Chavez, or I guess that was already something that, but the Department of Homeland Security, there are several arguments that are relevant. The Department of Homeland Security has a burden of proof of showing that the petitioner received the proper notice of the consequences of failing to appear, but nowhere is there any ruling by the Board on that issue. So if I'm following you, you're briefer than what you've said today, and if we put aside the Supreme Court having resolved what had been your prior issue, I think you're saying that there are three other arguments that you did exhaust because you raised them below, but that the Board didn't address. Is that what you're saying? Yes, sir. And aside, I mean, of course, aside from the issue of rescission, there's also the issue of the sua sponte reopening. The petitioner did not request sua sponte reopening with his motion to reopen, but the immigration judge below denied sua sponte reopening, and that issue was also appealed to the Board. I'm sorry, Counselor, these three arguments that we're talking about, were they raised before the BIA? Yes, sir, in the appeal to the Board's decision. And we understand it also as our answer to the immigration judge's decision as well because the immigration judge also brought up in her decision the matter of Pena Mejia. So it's not like this is something that we added on to the appeal for no reason. It's directly tied to the evolution of the case. So there's the issue of whether or not the Department of Homeland Security provided evidence, clear, convincing, and unequivocal evidence that the consequences of failing to appear were provided in the relevant notice, in the single notice, which would be the immigration court's hearing notice. And we argued, like I said in the appeal, that that information was not there. The Board ignored it. So that would be one issue on remand. In addition to that, we also criticized the immigration judge's holding that the judge who entered the in absentia order based his decision on an I-213, a record of deportable alien, that was admitted as an exhibit. But if one reads the in absentia order, there's no reference at all to the I-213. As a matter of fact, that in absentia order seems to have been entered in error because the immigration judge there stated that the hearing where the in absentia order was entered was a merits hearing where an application for relief should have been considered and that the issue of removability had previously been decided. So if you're right, now is not the time or place to convince us that you're right on these three arguments. You simply need to convince us you made these three arguments and they weren't addressed by the BIA, in which case we don't address them. We send them back to the BIA. So I'd like to be clear of my understanding that I haven't goofed up in understanding what your three arguments are that you say you raised below. One was that the notice didn't specify the consequences of non-appearance. Secondly, the BIA or the IJ applied the wrong burden. And lastly, the summary form of decision was inappropriate. Are those the three arguments that you're referring to? And also the sua sponte aspect as well, Your Honor. And so if you're right, our job is to look through what you filed before the BIA and see if all four of those arguments are made. Yes, sir. Yes, Your Honor. Your time is up. Thank you. Thank you, counsel. At this time, on counsel for the respondent, please introduce yourself on the record to begin. Good morning, Your Honors, and may it please the Court. Allison Freyer for the Attorney General. Petitioner has conceded the Campos Chavez issue, so I won't get into it unless there are any questions. As for the three arguments, Petitioner did not exhaust them before the immigration judge. What happened is the Petitioner filed his second motion to rescind and reopen before the immigration judge, raising only two arguments, one, that he was eligible for cancellation of removal, and two, that the IJ never had jurisdiction, subject matter jurisdiction, over the proceedings as a result of the deficient NTA. On appeal, the IJ denied the motion. On appeal to the Board then, he conceded both of those issues. He said the IJ had not made any error in its decision and instead raises these new issues to the Board. When there's an exhaustion, when the government raises a failure to exhaust issue, do we ask whether the argument was made to the IJ or do we ask whether the argument was made to the BIA? I thought it was the latter. And the BIA, in turn, has the ability and discretion to say that we're turning down this issue because it wasn't raised to the IJ. But it's the BIA who says that, not us. That certainly would be the best-case scenario. Well, let's assume we're trying to get the best-case scenario, okay? With respect to the three or four arguments that were just identified in my exchange with counsel, is it your contention that all of those arguments were not raised to the BIA? No, they were raised to the Board, although the sua sponte request and the dispute about the summary order were always tied together. That's why the number has been three throughout the litigation. They were tied together, but they were raised to the Board. So if there's agreement that these arguments were raised to the BIA, then doesn't that limit our task to determining whether the BIA decided them? That's certainly what this Court did the last time it granted the petition for review and sent the case back. And is it your contention that the BIA did decide them? No. There can be no argument. The Board did not address them at all. So what have we done, then? Don't we just send this back to the BIA to say, please tell us what you think about these three or four claims? That's certainly one possible outcome, yes. Well, what would the other one be? The other one would be to hold that the arguments were not exhausted before the IJ, as they needed to be. But what do you rely on for that? What case law? There's not a lot of case law in this scenario, and certainly not in our brief. But the Board is not allowed to find facts in the context of deciding an appeal, and so that's part of why it's preferable, and the statute contemplates, that all arguments will be made to the IJ. And then on appeal to the Board, what the Board is doing is reviewing what the IJ did. So switching horses midstream, like Petitioner did here, makes it harder for litigation. Yes, but then the Board has a waiver rule, has its own waiver rule, that it can apply. But that's, I mean, we've just discussed that's not an exhaustion issue. So we'd be sending it back. Presumably the Board could still say it could apply its waiver rule if we sent it back, right? Yes. Does it have to? Is that a discretionary rule? That's a hot issue at the moment. But, yes, it probably is at the Board's discretion whether to decide issues not raised before the IJ. So isn't there an obvious outcome here? Yes. And that is? Never mind, it's okay. I take it you can't state a government's position on the ultimate question here, which seems obvious based on the lack of case law you've provided us and what we've sort of talked about today. Yes, Your Honor. Okay. Thank you. Thank you, Counsel. That concludes argument in this case.